UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOSHUA ARDOLF, JACOB MADDEN, JNANA VAN
OIJEN, ANTHONY BALDWIN, and BUDDY
KRUEGER,

                           Plaintiffs,

      -against-

BRUCE WEBER,

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

18 Civ. 12112 (GBD) (SN)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Joshua Ardolf, Jacob Madden, Jnana Van Oijen, Anthony Baldwin, and Buddy Krueger bring this action against Defendant Bruce Weber for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1591, under which a civil private right of action exists, 18 U.S.C. § 1595. (*See* First Am. Compl. ("FAC"), ECF No. 36.) Specifically, Plaintiff Krueger alleges that Defendant, a fashion photographer, used his power in the male modeling industry to fraudulently entice and forcefully engage him into abusive commercial sex acts during two separate photoshoots. (*See id.* ¶¶ 1, 45–56, 84–104.) Defendant moves for summary judgement pursuant to Federal Rule of Civil Procedure 56, seeking dismissal Plaintiff Krueger's complaint on the grounds that it is barred by the applicable statute of limitations. (Notice of Mot., ECF No. 82.) Defendant's motion for summary judgment is GRANTED.

## I.   FACTUAL BACKGROUND

### A. Defendant Bruce Weber.

According to FAC, Defendant "was the most powerful and influential fashion photographer in the made modeling industry" who was "hired by magazines, designers, brands, and other clients to manage and control the entire casting process and directing of photoshoots and

other modeling campaigns. (FAC ¶ 12, 14.) Because of Defendant's prominence and popularity, aspiring male models would covet a spot in Defendant's photoshoots. (*Id.* ¶ 18, 22.)

### B. Incident One.

Plaintiff, a professional male model, alleges that in the fall of 2008, he was invited to an Abercrombie & Fitch photoshoot in Florida of which Defendant was in charge (hereinafter "Incident One"). (*Id.* ¶ 46.) At the photoshoot, Defendant allegedly got alone with Plaintiff and began to engage in a "fraudulent 'breathing exercise'" in which Defendant "put his hand on [Plaintiff's] chest and then lowered and lowered his hand until [his] hands were fondling [Plaintiff's] genitals." (*Id.* ¶ 47.) Plaintiff further asserts that "[a]s the molestation took place, [Defendant] said to [him] 'just relax and you'll go far in this industry,'" which Plaintiff understood to mean that if he permitted Defendant to sexually molest him, Defendant would assist with his career in the male modeling industry. (*Id.* ¶ 48.)

In response to interrogatories, Plaintiff swore that Incident One in fact occurred on September 9, 2008 at a Ruehl photoshoot where photos were being taken to be used for Abercrombie & Fitch, (Decl. of Daniel L. Brown ("Brown Decl."), Ex. A (Pl.'s Resp. to Def.'s First Set of Interrog. ("Pl.'s Interrog. Resp.")), ECF No. 84-1, at 35–36; *id.*, Ex. B ("Pl.'s Dep. Tr."), ECF No. 84-2, at 62:16–23)), and that it took place at the Tribeca Grand Hotel in New York City rather than in Florida, (Def.'s Local Rule 56.1 Statement of Material Undisputed Facts ("Def.'s 56.1"), ECF No. 86, at ¶ 7 (citing Pl.'s Interrog. Resp. at 35); Pl.'s Local Rule 56.1 Counterstatement ("Pl.'s Counter 56.1"), ECF No. 91, at ¶ 7). At his deposition, Plaintiff testified that the Ruehl shoot was in July 2008. (Def.'s 56.1 ¶¶ 9–11 (citing Pl.'s Dep. Tr.).) However, upon reviewing the contact and call sheets from the Ruehl photoshoot, Jonathan Bernstein, Vice President and Secretary of Little Bear, Inc.—the company responsible for cataloguing,

2

maintaining, and archiving the records of Defendant's photoshoots—claimed that "the shoot was on July 27–28, 2008 and that [Plaintiff] was present and participated in that Ruehl photoshoot on July 27, 2008." (Decl. of Jonathan Bernstein ("Bernstein Decl."), ECF No. 85, ¶¶ 7–8; *id.*, Ex. A (Call Sheet), ECF No. 85-1.) Plaintiff disputes the completeness of Little Bear's records as well as its accuracy, due to the assertion that Little Bear was not aware of all of Defendant's photoshoots, as well as the fact that "the photographs at issue in this matter were labeled by Mr. Bernstein in response to discovery." (Pl.'s Counter 56.1 ¶ 12.)

## C. Incident Two.

Plaintiff alleges that Defendant "recruited and enticed [him] to come to his private home/studio in Manhattan for a private shoot" in or about the spring of 2010 (hereinafter "Incident Two"). (FAC ¶ 50.) Once Plaintiff was alone inside Defendant's studio, Defendant allegedly engaged in the breathing exercise again, forcing "his hand lower and lower until he was once again fondling [Plaintiff's] genitals" despite Plaintiff's resistance. (*Id.* ¶ 52.) In order to secure his compliance, Plaintiff claims that Defendant stated, "'you can go far, you just need a little help from me.'" (*Id.* ¶ 53.) Plaintiff contends that he reasonably relied upon these statements as a promise of career advancement, but that Defendant "did not cast [Plaintiff] in any future campaigns" and "made no efforts to follow up with [Plaintiff] or work with him to advance his career." (*Id.* ¶¶ 54, 56.)

In later responses to interrogatories, Plaintiff swore that Incident Two occurred at Defendant's home/studio in spring 2009 or 2010, but did not recall the exact date. (Pl.'s Counter 56.1 ¶ 15.) At his deposition, Plaintiff then testified that though he could not recall the precise date or month of Incident Two without the assistance of documentation, he believed the incident occurred some time in 2009. (*Id.* ¶¶ 16–17.) Plaintiff also testified that he believes he went to

Defendant's home/office only once, though he is unsure whether the property was actually Defendant's studio or home. (*See* Pl.'s Dep. Tr. at 163:5–9 ("Q. You have stated several times already you only went to his studio in New York City one time, and that's the time that you claim that he touched you inappropriately; correct? A. Yes.").)

While Plaintiff is not certain of the exact date of Incident Two, he admitted that Defendant allegedly took Polaroid photographs of him at Defendant's home studio/office when the incident occurred. (*Id.* at 169:10–19 ("Q. And at this go-see at the studio with Bruce Weber, he took polaroids of you; right? A. Can you repeat that? Q. Yeah. He took polaroids of you at this go-see, at incident number two that you claim. A. Yes.").) Moreover, on September 9, 2008, Plaintiff sent a text message to his agent, stating, "[g]otta meet with [B]ruce [W]eber today." (Brown Decl., Ex. C ("Sept. 9, 2008 Text Message"), ECF No. 84-3.) Although Little Bear's records contain Polaroids of Plaintiff taken at Little Bear on September 9, 2008, Plaintiff has disputed the reliability of Little Bear's records in determining the date and location that the photos were taken, due to the fact that the Polaroids were labeled and dated by Little Bear or its counsel for the purposes of this lawsuit. (Pl.'s Counter 56.1 ¶ 22.) Additionally, Plaintiff has noted that "Defendant did not give Plaintiff the Polaroids from any shoot, and as such Defendant is the only one who would have the Polaroids." (*Id.* ¶ 32.)

Little Bear's records also contain an email sent from Little Bear on September 9, 2008 stating, "Bruce [Weber] wanted you to see the pictures of Buddy that he took today . . . Here is who Bruce would like for the [APC] shoot." (Bernstein Decl., Ex. C ("Sept. 9, 2008 Little Bear Email"), ECF No. 85-3, at 1.) This email identifies Plaintiff as one of the models Defendant wanted to use for the upcoming APC shoot. (Pl.'s Counter 56.1 ¶ 26.) On September 11, 2008, APC sent a follow-up email to Little Bear, containing pictures of models it was requesting for the

4

upcoming shoot. (*Id.* ¶ 27.) A visual comparison of the pictures reveals that one of the photos in the email matches one of the Polaroids allegedly taken of Plaintiff by Defendant at Little Bear on September 9, 2008. (*Id.*) Additionally, Mr. Bernstein has identified the call sheet from the APC photoshoot, "which includes [Plaintiff's] name, [and] indicates that the APC photoshoot occurred on September 17, 2008." (*Id.* ¶ 28.)[1] Plaintiff has also admitted that this APC shoot occurred on September 17, 2008. (*Id.* ¶ 29.) Plaintiff later clarified that "he knows Incident Two took place after the A.P.C. photoshoot, which took place in September of 2008, and that it was the last time he shot with Defendant." (*Id.* ¶¶ 18–19.)

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed.*

---

[1] Plaintiff has disputed this material fact, but his issues appear to be solely with Little Bear's labeling of the Polaroids, rather than the accuracy or dating of the call sheet. (*Id.*)

5

*Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings, *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED

Under 18 U.S.C. § 1595, a sex trafficking victim may bring a civil action against the perpetrator only if it is commenced within: (1) ten years after the cause of action arose; or (2) ten years after the victim reaches 18 years of age, if the victim was a minor at the time of the offense. 18 U.S.C. § 1595(a), (c). In other words, the ten-year limitations period begins to run when the cause of action arose. Here, it is undisputed that Plaintiff was not a minor when Incident One and Incident Two allegedly occurred. Since Plaintiff commenced this action on December 21, 2018, his claim is limited to conduct that occurred on or after December 21, 2008, and the claim must be dismissed if it is based on earlier conduct.

There is no material disputed issue of fact that both Incident One and Incident Two took place before December 21, 2008. As to Incident One, (1) in response to interrogatories, Plaintiff

6

testified that it took place at a Ruehl shoot in New York City, not a Florida Abercrombie & Fitch shoot, (Pl.'s Interrog. Resp. 35–36), (2) Plaintiff, at his deposition, admitted that the Ruehl shoot occurred in July 2008 in New York City, (*See* Pl.'s Dep. Tr. at 51:2–5, 53:21–25, 55:10–14), and (3) Little Bear records establish, consistent with Plaintiff's admissions, that it occurred on July 27–28, 2008—more than ten years prior to the commencement of this action. Plaintiff has not adduced any contrary evidence and does not dispute that Little Bear's records establish that the Ruehl shoot took place on July 27–28, 2008, 2008, (Pl.'s Counter 56.1 ¶ 13). As such, the evidence is indisputable that Incident One occurred in July 2008 and is therefore time barred.

With respect to Incident Two, Defendant has presented irrefutable evidence that it occurred on September 9, 2008—before the ten-year statute of limitations began to run. For instance, at his deposition, Plaintiff admitted that he was in Defendant's home/studio in New York City only once. (*See* Pl.'s Dep. Tr. at 163:5–9.) He also admitted that Defendant took Polaroid photographs of him that one time when he was in Defendant's home/studio. (*See Id.* at 169:10–19.) And on September 9, 2008, Plaintiff sent a text message to his agent, stating, "[g]otta meet with [B]ruce [W]eber today." (*See* Sept. 9, 2008 Text Message.) Additionally, Little Bear's records show that Polaroid photographs of Plaintiff were taken at Little Bear on September 9, 2008. (Pl.'s Counter 56.1 ¶ 22.) A few days later, on September 11, 2008, APC emailed Little Bear pictures of models, which included one of the Polaroid photographs of Plaintiff taken at Little Bear on September 9, 2018. (*See* Sept. 9, 2008 Little Bear Email.) Lastly, Mr. Bernstein has identified the call sheet from this APC photoshoot, "which includes [Plaintiff's] name, [and] indicates that the APC photoshoot occurred on September 17, 2008." Plaintiff admitted that the photoshoot in fact took place on that date. (Pl.'s Counter 56.1 ¶¶ 28–29.) Considering the evidence in the record, no reasonable juror can find that Incident Two occurred on or after December 21, 2008. Accordingly,

because Plaintiff failed to commence this action within ten years of the accrual of the alleged cause of action, it is barred by the statute of limitations.[2] *See, e.g.*, *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 138 (2d Cir. 1996).

## IV. CONCLUSION

Defendant's motion for summary judgment, dismissing the claim brought by Plaintiff Buddy Krueger, (ECF No. 82), is GRANTED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
September 1, 2020

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[2] In his opposition brief, Plaintiff argues that his cause of action did not accrue before December 21, 2008 under the discovery rule. Plaintiff's argument is unavailing because the discovery rule is "an exception to the general limitations rule that a cause of action accrues once a plaintiff has a complete and present cause of action." *Merck & Co. v. Reynolds*, 559 U.S. 633, 644–45 (2010); *see also Singleton v. Clash*, 12 Civ. 8465, 2013 WL 3285096 at *6 (S.D.N.Y. July 1, 2013) ("Congress's failure to include language providing for the discovery rule counsels against implying it into the statute. . . . Congress appreciated that it was dealing with injuries to minors and could have adopted language similar to that in state sexual abuse statutes which expressly provide for the discovery rule.").

8